### AT THE

## NOVEMBER SESSION 1863, AT BOSTON.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,
HON. PLINY MERRICK, ⎬ JUSTICES.
HON. EBENEZER R. HOAR,
HON. REUBEN A. CHAPMAN,

---

## SUFFOLK COUNTY.

HIRAM WHITMAN & another *vs.* BOSTON AND MAINE RAILROAD

The value of land in controversy may be proved by the testimony of witnesses personally acquainted with the subject, and sufficiently familiar with it to give an opinion, although they have never bought or sold land in the vicinity, or known or heard of such sales from the buyer or seller.

One who has been an assessor for eighteen years may testify to the value of land and an easement connected therewith, taken for a railroad in the first year that he was assessor, although he had no personal knowledge thereof prior to such taking.

A petitioner for damages to land, a part of which has been taken for a railroad, may be asked on cross-examination for what price he sold the residue of the lot, seventeen years thereafter.

One who has made a conveyance of a lot of land bounded upon a canal, with a privilege in the canal, and all other privileges and appurtenances to the premises belonging, has no

right thereafter to make or permit alterations in the canal by which his grantee's privilege therein would be injured.

In estimating the damages to land sustained by reason of the location of a railroad over a portion of it, the value at the time when the land was taken is to be regarded; and if payment is delayed, interest from that time may be added.

No exception lies, on the part of the respondents, to an instruction to the jury, in reference to the damages sustained by reason of the location of a railroad over a portion of a lot of land, and the filling up of an adjacent canal in which the owner of the lot had a privilege, that if by reason of these acts the value of the land which remained was so increased in consequence of some peculiar advantages conferred upon it, in which the other estates in that vicinity not situated upon the canal did not participate, that the remainder of the land was worth as much as the entire lot was worth before, the owner has no claim for damages; although the jury are also instructed that the benefit which is to be set off is some increased value which the estate had received in consequence of its becoming better adapted to and more valuable for some specific purpose than the other estates where the land had not been taken, and illustrations of such benefits are given.

If there is a controversy as to the value of an easement in a canal in a city, into which drains and sewers lead, a request for an instruction to the jury that in estimating such value they should take into consideration all the lawful uses to which the canal has been subjected, and the effect of such uses, either in impairing the value of the canal for navigation, or as leading to its probable suppression as a nuisance, is sufficiently complied with by an instruction to them that they are to determine the value of the easement at that time, having reference to the state of things as they then existed, the sort of canal which it was, its depth, width, character, degree of offensiveness, and all the facts and conditions affecting the quality and character of the easement, and the land with which it was connected.

PETITION for a jury to assess the damages sustained by reason of the location of a railroad upon land of the petitioners, at the corner of Haverhill and Causeway Streets in Boston, and filling up an adjacent canal.

At the second trial in the superior court, before *Vose*, J., after the decision reported in 3 Allen, 133, the petitioners, for the purpose of showing the value of the land and easements, called Calvin Young as a witness, who testified that he occupied a lot situated one hundred and fifty feet below the petitioners' wharf on the canal from 1840 to 1845; that he hired it and paid rent for it; that he used the canal as others did; that he heard of sales of land on the canal about the time of the location of the railroad, but not from the buyer or seller; and that he had no knowledge of any sales, and had never bought or sold land on the canal. The petitioners proposed to ask this witness the value of the land and of the easement in the canal; but the respondents objected, and the judge refused to permit the question to be put.

The respondents called Henry Sargent, who testified that he

was principal assessor of Boston; was first chosen in 1844, and has held the office ever since; that he assessed this land for the year 1844; that he did not know when he first saw it, but it was not until after the canal was filled up opposite to it; that he never knew how the petitioners used the canal, and did not know what their rights in the canal were; that he had known of sales of land on Howard Street, but not on the canal; had assessed other wharf property on the canal, and in other parts of the city, and had never been engaged in any business which required the use of a wharf, in any part of the city. The respondents then asked the witness what, in his opinion, the land was worth, at the time of the respondents' location of their road. The petitioners objected that he was not qualified to give his opinion as an expert, but the judge overruled the objection.

The respondents also introduced one Cowdin, who testified he was a dealer in marble and owned a lot of land on Charlestown Street, from one hundred to one hundred and fifty feet from the canal, and six hundred to eight hundred feet from the petitioners' lot; that his lot was not on the canal or any other water, or used for wharfing purposes; that he was well acquainted with the petitioners' wharf and the canal, and had known how it was used for thirty-five years; that he had heard of the sales of land on the canal to the respondents, just before their location, and the prices paid, from parties to the sales, and had used wharves in other parts of the city, for the purpose of receiving on them stone to be used in his business. The respondents then asked the witness the value of the petitioners' land. The petitioners objected that the witness was not qualified to give his opinion, but the judge admitted his testimony.

The petitioners also claimed that the remainder of their lot was injured by the location of the respondents' road so near to it, and Otis Minot, one of the petitioners, was called to show it. Upon cross-examination, he was asked for what price the remainder of their lot was sold. To this question the petitioners objected, as the sale was not made till 1861, but the judge allowed it to be put.

The jury returned a verdict for the petitioners, with $2881.75

damages; and the petitioners alleged exceptions, which were argued in March 1863.

*J. G. Abbott & H. C. Hutchins,* for the petitioners.

*B. F. Thomas & C. P. Judd,* for the respondents.

DEWEY, J. 1. We have no doubt as to the competency of the evidence of Cowdin. It was well authorized by the cases of *Walker* v. *Boston,* 8 Cush. 279; *Shaw* v. *Charlestown,* 2 Gray, 109; and *Russell* v. *Horn Pond Branch Railroad,* 4 Gray, 607.

2. We can perceive no sufficient ground for excluding the testimony of Young. In *Shaw* v. *Charlestown* the court say that it has now become the well settled law of this commonwealth that the value of property in controversy may be proved by the testimony of witnesses personally acquainted with the subject, who are sufficiently familiar with it to give an opinion of its value. Such evidence is admitted from necessity, and is not confined strictly to experts. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316. *Haskins* v. *Hamilton Ins. Co.* 5 Gray, 432. *Fowler* v. *County Commissioners,* 6 Allen, 92. It is true that Young was not the owner of the land which he occupied, and in this respect his case differs from those cited. As to his knowledge of actual sales by others of contiguous lands, his case does not materially differ from the cases of *Walker* v. *Boston* and *Russell* v. *Horn Pond Branch Railroad;* and as to any personal knowledge of sales beyond the land they severally occupied, there was not, so far as appears, any superiority in the witnesses allowed to testify in those cases over that of the witness Young. The question is, whether the opportunities for ascertaining the value of land and easements connected therewith may not enable a witness to testify to it, although he may not be the owner of land, or have personally bought and sold land. The true inquiry is, whether the witness is sufficiently informed on the subject to give evidence of the value of the property. How that information or knowledge was acquired is quite immaterial, if it really exists.

The witness here offered had occupied a lot one hundred and fifty feet below the petitioners' wharf on the canal for five years; had hired it and paid rent therefor; had used the canal as others

did; and had heard by report as to sales of land on the canal. A portion of the proposed inquiry was as to the value of the easement in the canal. As to this portion of the inquiry, it would seem that one who had occupied under a lease held by him might be equally competent to testify to the value as one owning a title of a higher character. His proximity to the land and continued occupation of his hired lot in the vicinity might furnish him with sufficient opportunity to enable him to state the value of the land and of the easement, although he was not the owner of land in fee simple; and, as it seems to us, the pro- posed questions should have been allowed to be put, leaving the jury to judge of the proper weight to be given to the an- swers to them.

3. The admission of the testimony of Sargent furnishes no sufficient ground for exception. The witness had for eighteen years held the office of assessor for the city of Boston, and was of course assumed to have knowledge of the value of real estate in Boston. He had assessed the land of the petitioners as early as 1844, upon the basis of its value on the 1st of May 1844, although in fact he had not personal knowledge of it prior to the taking of the land and the filling up of the canal; the actual valuation not being made until after June 10th 1844. His duties led him to have a knowledge of other wharf property on the canal and in other parts of the city. The case of *Dickenson* v. *Fitchburg*, 13 Gray, 546, would seem to support this view. In that case a county commissioner, whose duty it was to assess damages for land taken for a highway, was the proposed witness. The court say that his position and duties would qualify him to form a correct opinion on such subjects. The witness there had often seen the land. In the present case, the like full oppor- tunity for estimating its value did not exist as to this particular parcel of land, as the canal had been filled up previously to his seeing it. But the fact that Sargent did not see this land until a short time after the canal was filled up does not necessarily disqualify him from giving an opinion of the value of it when taken, if his facilities for acquiring an adequate knowledge of its previous state and of the value of the same were such as to

enable him to form a proper estimate thereof. There was evidence tending to show that he might have such knowledge, and, so far as any doubts existed in the minds of the jury as to his means of forming a correct opinion, it would necessarily weaken the effect of his testimony.

4. The further objection taken to the admission of evidence was that as to the question put to Otis Minot, one of the petitioners, on cross-examination by the respondents. Minot was called to prove that the remainder of the petitioners' lot was injured by the location of the railroad so near to it. Upon cross-examination he was asked by the respondents for what price the remainder was sold. The only ground of objection to the question was, that the sale did not take place until 1861, while the claim for damages was for the injury done to it in 1844. This remoteness would certainly greatly weaken the effect of such sale upon the point in issue; but that would be an objection to the weight rather than to the competency of the evidence. It might be that no material changes had taken place in this period of time; but to whatever extent they may have existed, they would qualify the effect of the evidence. But further than this, it is to be borne in mind that this was an inquiry on cross-examination of the party himself, called to testify in his own favor, and where great latitude of cross-examination might test the accuracy and fairness of the witness. We think the question might properly be allowed to be put, and this exception cannot be sustained.

The result is, that the exceptions as to the exclusion of the evidence of Young are sustained, and in all other respects overruled.

This case was tried again in the superior court, before *Vose,* J. It appeared in evidence that in 1643 the town of Boston granted to Henry Simmons and others a cove and flats, which included the premises in controversy, on certain terms and conditions; that this estate subsequently became vested in the Boston Mill Corporation; that by an indenture dated July 4, 1807, the inhabitants of Boston released to the mill corporation " all conditions, right, title, interest and estate in the land originally

granted by said inhabitants to Simmons and others," and the mill corporation agreed that the mill creek (which was identical with the canal in question) should be " continued by them and kept open of its present width to Charles River; subject only to such variations as may be mutually agreed to by the town and the proprietors." The title of the petitioners is stated in the former report of this case. See 3 Allen, 135.

The respondents offered evidence that the canal when filled up was variable in width, being in some places more and in some less than sixty feet; that the distance from Haverhill Street to Canal Street was about one hundred and thirty feet ; that from the time it was known that the railroad was to come into the city over the bed of the canal all the lands upon each side of the canal, prior to the location of the road, increased in value; and there was no evidence of any change of value immediately before or immediately after the filing of the location in June 1844. It also appeared that various sewers and drains of the city emptied into the canal ; and the respondents offered evidence to show that up to the time of filling up the canal in 1844 these sewers and drains, by so emptying into the canal, caused a very offensive stench, and defaced and discolored vessels coming into the canal.

For the purpose of showing the value of the premises, the petitioners called Charles R. Rice as a witness, who testified that he was a dealer in wood and coal on the creek five or six years before it was filled up ; that he knew how the creek was generally used by the abutters and by the petitioners; that he did not hear or know of any sales of land on the canal or in its vicinity ; and that he hired land on the creek. On cross-examination he said he did not know the market value of the lot of the petitioners before or after the creek was filled up. This witness was permitted, against the respondents' objection, to testify that the value of the easement in the canal, as connected with the petitioners' estate, was one half of the whole value of the estate ; and that the land of the petitioners was not worth more than half as much with the canal filled up, as before.

The respondents asked the presiding judge to give the following instructions to the jury, amongst others:

" 1. That in estimating the damages to the respondents by the laying out, making and maintaining of the railroad, either by taking the property of the petitioners or by injuring it in any manner, they are to allow, by way of set-off, the benefit, if any, to the property of the petitioners by reason of so laying out, making and maintaining said road.

" 2. If the jury shall find that, by reason of the filling up of the canal and the location of the road over a part of the petitioners' land, the value of the land was so enhanced that what remained of the same lot after the filling up and location was worth more than or as much as the entire lot before the filling up and location, the petitioners have no claim for damages, and the verdict must be for the respondents.

" 3. That the jury cannot include in their estimate of damages any increase of the value of the land of the petitioners, caused by the location and construction of the railroad.

" 4. That in determining whether any benefit has been done to the land of the petitioners not taken, by reason of the location and construction of the railroad, in the increase of the market value of such land, the jury are to regard the increase of value caused by the inception and prosecution of the enterprise, and not merely the difference of value immediately before and immediately after the filing of the location of the railroad.

" 5. That in estimating the damages, if any, to the petitioners, the jury are to have regard to the market value of the land taken or affected by the laying out and construction of the railroad, and not to the special purposes for which it may have been used by the petitioners.

" 6. That if the petitioners are entitled to receive damages for the value of the land as enhanced by the laying out and making of the railroad, then as such location and construction, under the charter, necessarily involved the filling up of the canal, the petitioners can have no claim for the loss of the privilege in the canal, as the same acts which enhanced the value of the land terminated its use as a wharf.

" 7. The petitioners' only title to the land and to the privilege in the canal is under the deed of the Boston Mill Corporation to Fenno, and mesne conveyances to them. The privilege or easement under these grants was in a canal which might be altered or filled up by the joint action of the mill corporation and the city of Boston ; and for such alteration or filling up the petitioners would not have been entitled to damages ; and in estimating the value of this privilege, the jury are to regard it as subject to such condition and limitation.

" 8. In estimating the value of this privilege, the jury should take into consideration all the lawful uses to which the canal had been subjected, and the effect of such uses, either in impairing the value of the canal for navigation, or as leading to its probable suppression as a nuisance.

" 10. If the jury find any damage for the petitioners, interest is to be allowed thereon only from the filing of the petition of the petitioners before the mayor and aldermen, which was on June 8th 1847.

" 12. If the jury find that the respondents took any of the solid or head land of the petitioners by their location, the value of that land is to be estimated at its fair market value June 10th 1844, unaffected by any advance occasioned by or resulting from the inception and prosecution of the establishment of the railroad."

But the judge declined so to rule, and instructed the jury, amongst other things, substantially as follows :

" The respondents are bound to pay for all the land of the petitioners which they took and appropriated under their location. It is claimed by the petitioners that the amount of the land so taken was two hundred and ninety-one feet. Whatever amount of land was included within the line of the location as it passed over the estate of the petitioners and the line of the land, taking the wall to be the line, that amount of land the petitioners are entitled to be paid for. . . . . . . The petitioners are entitled to recover for such an amount of land as was covered by the deed of Fenno, in 1828, [see 3 Allen, 135,] between

the line of the location across the petitioners' land and the canal wall, as it was at that time.

" 1. In fixing the value of this land, you are to determine its value when the location was made, which was on the 10th of June 1844. Now, so far as this amount of land is concerned — two hundred and ninety-one feet, if that was the amount — the petitioners are entitled to recover what was its fair market value on' that day, having reference to the ordinary and legitimate purposes to which the estate, in connection with the easement attached to it, might be appropriated. In determining what was the fair market value, you are not to take into consideration any of the causes that entered into the market value at that time. It is not impossible that the very agitation of this project of bringing this railroad into that locality had increased the market value of the estates in that vicinity, the estate of the petitioners included. If such was the fact, the petitioners are not to be deprived of the value so increased, in determining what was the market value of their property at the time of the location. Without taking into consideration the causes of the increase in value, you are to determine what was the market value, having reference to the purposes for which 'the estate could be used. The petitioners are not to recover for land as increased in value by the laying out and construction of the railroad, but only for the value of the land at the time of the location, and before the construction was entered upon. They are not entitled to recover any damages for the value of the land as increased by the construction of the road.

" 2. In addition to this, the petitioners are entitled to be indemnified for the destruction of the easement in the canal, according to its value at that time. You are to determine this, having reference to the state of things as they existed in June 1844 ; to the sort of canal in which it existed ; the depth and width of the canal ; the nature of the business that might be ordinarily and legitimately pursued upon the estates bordering upon the canal ; the character of the canal itself ; whether it was of that offensive character which is claimed by the respondents — so offensive as to affect the value of the easement itself.

You are to take it as an absolute and unrestricted right. Whatever the value of the right was, whatever the easement was that these parties had, it was not qualified by any such restrictions and limitations in favor of any third persons, whether the city of Boston or the mill corporation, as claimed by the respondents. To the extent of the easement, so far as it had any value, it was an absolute, unrestricted right. . . . . . .

" 3. You will also take into consideration, in your examination of the effect which the construction of the railroad and the destruction of the canal had upon the property, whether or not there were any benefits conferred upon the residue of this estate which the respondents are entitled to have set off against any damages they have done to the petitioners. You no doubt will be satisfied upon the evidence that, in consequence of the anticipation of the bringing of the road into that vicinity, all the estates in that locality had appreciated in value, and the petitioners' estate in common with all the others, at the time of the location. I have to instruct you as a matter of law that, so far as the estate of the petitioners had appreciated in marketable value, in common with all the other estates in that locality which were not encroached upon by the location of this road, that increased value, so had in common with all the other owners in the neighborhood, is not to be set off against or deducted from the damages which the petitioners may have suffered in consequence of the location of the railroad over their property. There is a benefit sometimes accruing, peculiar to the remaining land adjacent to that taken, which is to be set off. A very proper illustration has been suggested, as showing what such peculiar benefits might be, where a highway should be opened through a farm, where before the location the lands had only a value for tillage purposes, but in consequence of the location of the road all the land had been brought into the market and had acquired an increased value for building purposes. That would be a peculiar and special benefit conferred upon those estates bordering upon that highway, for which there should be a set-off against the damages which the owner would be entitled to recover. As a further illustration, a party might have

appropriated his estate to certain mechanical purposes, and the construction of a railroad directly in the vicinity, taking a part of the estate, and bringing the trains and cars and facilities of transportation directly to the property used in that way, would confer very peculiar advantages upon that estate. That would be a peculiar benefit, and should be set off against any damages suffered by the construction of the railroad; so that when you are to consider what benefits, if any, are to be set off against the damages, it is not the increased value which this estate has received in common with all other estates in that vicinity, but it is some benefit, some increased value, which this estate has received, in consequence of its becoming better adapted to and more valuable for some specific purpose than the other estates where the land has not been taken. If you are satisfied that, by reason of the filling up of the canal by the respondents and the location of the road over a part of the petitioners' land, the value of what remained was so increased in consequence of some peculiar advantages conferred upon that remainder, in which the other estates in that vicinity, not situated on the canal, did not participate, that the remainder, after the location of the road and the filling up of the canal, was worth as much as or more than the entire lot before the filling up and the location, including the land taken, then the petitioners have suffered no damages, and they are not entitled to recover.

" In determining these damages, and in applying these rules to this case, you are in the first place to adopt the 10th of June 1844 as the period of time as to which this question of damages is to be determined. Having reference to that period of time, you are to allow these petitioners the market value of whatever, at that time, was the amount of land actually taken. You are to allow the value of this easement, having reference to all the facts and conditions affecting the quality and character of the easement, and of the land with which it was connected. In addition to this, you are to inquire whether the destruction of the canal and the construction of the road have injured or benefited the residue of this estate. If you find that in consequence of the construction of this railway the residue of this property,

by being better adapted — taking into consideration all the ordinary purposes to which the estate might be applied, after the road was constructed — to any or all of these purposes, has thereby acquired an increased value, so that the whole value of the remainder is as great as or greater than the whole value of the estate before the railroad had interfered with it, then that increased value is to be set off against the amount which you might find the damages to be, and in that case the petitioners would not be entitled to recover. But if you should find that there was no such benefit conferred upon this estate, and that in point of fact the construction of the road was an injury to the residue of the property, so as to depreciate its market value, then you will inquire how much injury was done, and whatever you find that to be, you will add it to the value of the land taken, and of the easement, and these three sums, with interest from June 10th 1844, will constitute the amount of damages, if any, which the petitioners are entitled to recover."

The jury returned a verdict for the petitioners, with damages in the sum of $14,150.84; and the respondents alleged exceptions.

*B. F. Thomas & C. P. Judd*, for the respondents.

*J. G. Abbott & H. C. Hutchins*, for the petitioners.

MERRICK, J. The petitioners derive their title to the premises over which the respondents located their road through several intermediate conveyances under a deed from the Boston Mill Corporation to James W. Fenno. It has already been determined that the right in the canal thus acquired by them is permanent in duration, and that they are therefore authorized to ask for damages for the destruction of a permanent easement. 3 Allen, 133. Upon the last trial of this case, the respondents contended that the right and easement of the petitioners in the canal were qualified by certain restrictions and limitations in favor of the city of Boston and of the Boston Mill Corporation, arising under a deed of indenture dated July 24th 1807 between these parties. But the presiding judge declined to sustain that position, and ruled that their right was absolute and unconditional. This appears to us to have been perfectly

correct.  In that indenture the mill corporation covenanted and agreed that Mill Creek, which is identical with the can.l, should be continued by them and kept open of its width at that time to Charles River, subject only to such variation as might be mutually agreed to by them and the town.  When the mill corporation afterwards conveyed to Fenno a right and ease-ment in the canal as it then existed, they thereby deprived them-selves of the power of making a valid contract for its alteration without his consent.  He could not lawfully be impeded against his will in the enjoyment of the easement which he had thus acquired, and therefore it was subject to no limitation or re-striction.  And this right, which was absolute and unconditional in him, was, when subsequently conveyed to the petitioners, equally so in them.

In estimating the damages sustained by the petitioners, the jury were properly advised to consider the value of the land and of the easement connected with it at the date of the loca-tion by the respondents of their road over it.  This was the time when and the act by which they made the land so taken their own, for all the purposes for which they were entitled to hold it, and after which the petitioners could no longer derive any advantage from its possession or use.  They therefore became at once entitled to a just recompense and compensation for the estate of which they were thus deprived.  And if the payments were delayed, it is reasonable and just that interest in the mean time should be added to the principal of the claim.  And these rules have accordingly been approved and sanctioned by the court in adjudications in other similar cases. *Meacham* v. *Fitch-burg Railroad,* 4 Cush. 291. *Dickenson* v. *Fitchburg,* 13 Gray, 546. *Parks* v. *Boston,* 15 Pick. 198.

The presiding judge did, in conformity to the respondents' second prayer for instructions, advise the jury that the petition-ers were not entitled to recover anything as compensation for damages sustained, if, by reason of the filling of the canal and the location of the railroad over a part of their land, the value of what remained was thereby so increased as to be worth as much as the whole was before.  But the respondents object that

this instruction was accompanied by a statement of limitations and restrictions to be applied to the rule thus laid down, which would render the provisions of the statute for the set-off of benefits utterly nugatory, and therefore that they were thus deprived of advantages to which they were legally entitled. But there does not appear to be any just cause or foundation for this objection. In stating the provisions of the statute to the jury, it was not only proper, but necessary that the court should also explain to them its true import and signification, and upon what rule and principle they were to act in making an allowance for the benefits conferred upon the petitioners in respect to that portion of their land which remained after the location of the road was made. And considering the whole charge as it is reported in the bill of exceptions, the explanation given appears to have been in accordance with the exposition of the statute and the rules deducible from it which had been established by previous decisions of this court. It cautioned the jury on the one hand not to lay stress on the vague, general and indefinite benefit which all the inhabitants of a particular locality may be supposed or known to have derived from some great public improvement ; and it required them on the other to allow whatever increased value resulted to the remainder of the estate from any peculiar advantages, as compared with other lands generally in its vicinity, conferred upon it, in which the proprietors of other estates situated upon the canal might also in like manner participate. The particular instances referred to in which advantages might be supposed to be conferred upon the remainder of an estate or lot of land, part of which had been taken for public use, were not stated as the only cases in which a just claim for a set-off for benefits conferred would arise, but only as illustrations which would enable the jury the more readily to understand and appreciate the explanation given to them. Taking the whole of the instructions upon the subject into view, we are unable to perceive that they afford any just cause of exception. *Upton* v. *South Reading Branch Railroad,* 8 Cush. 600. *Dickenson* v. *Fitchburg,* and other cases above cited.

As to the respondents' sixth prayer for instructions, it does

not appear from the facts reported in the bill of exceptions that there was any occasion for giving it to the jury, or that there would have been any fitness or propriety in doing so. It was not shown nor does it now appear that the location and construction of the railroad necessarily involved the filling up of the canal. Under the charter, · the railroad was to be located between Haverhill and Canal Streets, the distance between which was shown by the evidence produced by the respondents to be one hundred and thirty feet, while the width of the canal was about sixty feet. There was, therefore, without encroaching at all upon the space occupied by the canal, a large and ample surface of solid land upon which the location of a railroad might have been made.

It is further claimed by the respondents that the court erroneously omitted to give to the jury the instructions asked for in their eighth prayer. It was not indeed given in those precise terms. But the direction that the petitioners were entitled to be indemnified for the destruction of their easement in the canal as it existed at the time of the location of the road, and that the determination of this question was to be made in view of the facts or state of things then being, the sort of canal that it was, its depth and width, the nature of the business that might ordinarily be pursued upon the estates bordering upon it, its general character, and whether it was so offensive by means of what was discharged into it from the drains and sewers of the city as essentially to impair the value of the easement, comprehended the entire substance of the instruction asked for, and was a sufficient compliance with the request submitted to the court.

The testimony of Mr. Rice was properly admitted. He was acquainted with the petitioners' estate, with the creek and canal, with other lands bordering upon it, and knew how it was used by the several proprietors of such estates, and he had himself been in business there, using the canal in his way of trade for several years. Although he had not acquired a knowledge of the market value of those several estates, it is certainly quite possible that he could, by the means and opportunities which he enjoyed, have formed a just and accurate opinion as to the comparative

value of the land and of the easement connected with it. This he professed to have done; and the presiding judge in the exercise of his discretion allowed the witness, in giving his testimony, to state what his opinion upon the subject was. This was evidence which might be of some use or assistance to the jury in discharging their duty, and it was, therefore, very correctly submitted to them.

If it was ever intended by the respondents to insist upon any other objections than those above adverted to, arising upon the bill of exceptions, all notice of them was omitted in the argument on their behalf; and therefore they are considered as having been intentionally waived.          *Exceptions overruled.*