## THE KANSAS CITY & SOUTHWESTERN RAILROAD COMPANY v. R. EHRET.

EMINENT DOMAIN — *Compensation* — *Evidence.* Farmers who reside within the vicinity of a particular farm, who are familiarly acquainted with the farm, who know its capabilities, and who can testify that they know its value, may give their opinions in evidence with respect to its value, and such opinions are competent evidence, although such farmers may not know of any sale of any farm in that vicinity.

### *Error from Cowley District Court.*

THE opinion states the case. Judgment for plaintiff *Ehret,* at the September term, 1886. The defendant *Company* brings the case to this court.

*Jos. O'Hare,* for plaintiff in error.

*W. T. Madden,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an appeal by R. Ehret from an award of damages made to him by the board of county commissioners of Cowley county in certain condemnation proceedings had for the purpose of appropriating a right-of-way for the Kansas City & Southwestern Railroad Company through his land and the land of others. The commissioners awarded damages to him to the amount of $542.40. After the appeal was taken, the case was tried in the district court before the court and a jury, and in that court damages were awarded to him to the amount of $870. The jury assessed the damages

as follows: For the value of the land taken, $232.80; for damages to the remainder of the land, $633.20; for fences taken, $4; total, $870. To reverse the judgment of the district court, the Railroad Company, as plaintiff in error, has brought the case to this court. The principal alleged errors are as follows: 1. Error in the admission of improper testimony; 2. Error in excluding proper testimony; 3. Error in giving erroneous instructions to the jury. We shall consider these alleged errors in their order.

I. It is claimed that improper testimony was permitted to go to the jury, and the testimony of five witnesses is referred to. These witnesses were all farmers living in the vicinity of the land in question, had full and complete knowledge of the same, and testified with respect thereto, giving full details. Their testimony showed that the land was worth but little except for farming purposes; and they testified that they knew the value of the land for such purposes. But they did not testify that they knew its *market* value as contradistinguished from its *usable* or *productive* value; nor did they testify that they knew of any sales of any land made in their vicinity at or about the time when the right-of-way in this case was appropriated, and probably there were no such sales. These witnesses were permitted to give their opinion with respect to the value of this land, and this it is claimed was error. It is claimed that only such witnesses as know the *market* value of the land in question should be permitted to give opinions concerning its value, and that such opinions should be confined exclusively to *market* value. Now this claim is certainly untenable. It is not the *market* value merely that is in question, nor the usable or productive value, but it is the *real* value. And this real value involves everything that tends to make the land more valuable or less valuable. "The value of land for farm use is a proper subject of inquiry in proceedings to condemn it for railway purposes." (*Mich. Air Line Rly. Co. v. Barnes*, 44 Mich. 223.) Indeed, the value of land for any use is a proper subject of inquiry in such cases, and anything may be shown which will tend to show a greater or

less value, or which will tend in any manner to affect its value, and the owner may in all cases recover for its diminished value, taking into consideration any purpose for which it might be the most profitably used. The market value of property is only a measure or evidence of its real value, but in some cases it is very important. Indeed, where property has an absolute market value like government bonds or certain railroad stock, it is controlling. But real estate can never have any such absolute market value, and farms can hardly have any market value at all. Hence with respect to farms we have to resort to other measures of value, as to the value of their use, etc. Each farm depends principally for its value upon its improvements, its productiveness, the fertility of its soil, and the amount of money which can be realized from it. And it also depends for its value upon a great variety of special things: upon its location, its size, shape, and configuration; whether hilly, level, undulating or otherwise; its symmetry, beauty, attractiveness, etc.; whether it slopes one way or another, or in many ways; the quality and productiveness of its soil; the amount, kind and quality of its water, stone, minerals, etc.; how much forest, how much prairie, how much cultivated land, how much uncultivated; whether subject to weeds or other pernicious things to make it difficult of cultivation; its proximity to or remoteness from cities, towns, villages, markets, schools, churches, public roads, highways, and the kinds and characters of all these things; and also many other things not necessary to mention. All these things enter in to make a farm of greater or less value, and all these things may be shown. And with respect to these things no two farms can be alike, and they never are alike; and no two farms can be injured in precisely the same way by railroads passing through them. Farms are unlike railroad stock or bank stock, or other stock which may have an actual market value. They are unlike wheat, or corn, or other grain, which may respectively be homogeneous in character. They are unlike almost everything else. The most of things which are bought and sold may be classified, and a common or market value be established for

all the things belonging to each particular class.   In such cases when a market value is established for one particular thing of any particular class, a market value is established for all the things of that class.   But farms cannot well be classified; each farm must to a great extent be considered separately, and the value of each farm must be determined separately.   The market value of a thing is established by sales and purchases; the usable or productive value of a thing is established by the value of its use and the amount of profit which can be realized from it; but the real value of a thing is established or ascertained from all these things, and more too.   It may be true that the market value of a thing may be established by sales and purchases of such thing alone made at different times, or by offers to purchase it made by different persons.   But this is not the kind of market value involved in this case, or which we have been considering.   The kind of market value which we have been considering in this case has reference only to a general class or kind of property, homogeneous in character, or composed of a vast number of like parts or like things, and the value established by actual sales and purchases of some part of the homogeneous mass, or some of the like parts or like things out of the general whole.   This is what is usually understood as the market value of a thing as contradistinguished from the usable, productive, or real value thereof. But it is difficult to see how this kind of value can be applied to farms.   Of course whenever a farm has a market value it is proper, and in many cases necessary, that such value should be shown, but proof of such value is not exclusive of other modes of proving the real value of the farm.

After a careful consideration of this case, and of the whole subject of the proof of value of real estate, we have come to the conclusion, both upon reason and authority, that farmers who reside within the vicinity of a particular farm, who are familiarly acquainted with the farm, who know its capabilities, and who can testify that they know its value, may give their opinions in evidence with respect to its value; and such opinions are competent evidence, although such farmers may not

know of any sale of any farm in that vicinity. As tending to support these views, we would refer to the following authorities: *St. L. K. & A. Rly. Co. v. Chapman,* 38 Kas. 307; *L. & W. Rly. Co. v. Hawk,* 39 id. 638; *L. & W. Rld. Co. v. Ross,* 40 id. 598, 20 Pac. Rep. 197; *Whitman v. B. & M. Rld. Co.,* 89 Mass. (7 Allen) 318; *Snow v. B. & M. Rld. Co.,* 65 Me. 230; *I. & W. Rld. Co. v. Von Horn,* 18 Ill. 257; *K. & E. Rld. Co. v. Henry,* 79 id. 290; *Johnson v. F. & M. R. Rly. Co.,* 111 id. 413; *Robertson v. Knapp,* 35 N. Y. 91; *Snyder v. W. U. Rld. Co.,* 25 Wis. 60; *B. & M. Rld. Co. v. Schluntz,* 14 Neb. 421; same case, 14 Am. & Eng. Rld. Cases, 182; *S. C. & P. Rld. Co. v. Weimer,* 16 Neb. 272; same case, 20 Am. & Eng. Rld. Cases, 184; *Sherman v. St. P. M. & M. Rly. Co.,* 30 Minn. 227; same case, 10 Am. & Eng. Rld. Cases, 193; *C. & G. Rld. Co. v. Mims,* 71 Ga. 240; *St. L. A. & T. Rld. Co. v. Anderson,* 39 Ark. 167, 172; same case, 17 Am. & Eng. Rld. Cases, 97, 99; *Penn. & N. Y. Rld. Co. v. Bunnell,* 81 Pa. St. 414, 426; *Little Rock Junction Rld. Co. v. Woodruff,* 33 Am. & Eng. Rld. Cases, 169. See also Lawson on Expert and Opinion Evidence, 433–438, and cases there cited; 1 Sutherland on Damages, 798; 3 Sutherland on Damages, 462. In the case of the *St. L. K. & A. Rly. Co. v. Chapman,* 38 Kas. 307, we held that persons residing in the vicinity of the land, but without any knowledge of the market value thereof, may in some cases give their opinions as to its value. The syllabus of that case reads as follows:

"1. Upon the trial of an appeal from an award by commissioners of damages caused by the appropriation of a right-of-way through an addition to a city for railroad purposes, and a number of witnesses are called who testify that they have known the land appropriated for many years, its location and situation, and that at the time of its appropriation it had no market value; that they knew the value of real estate in that vicinity at the time of said condemnation; and such witnesses are permitted, over the objection of the defendant, to testify as to the value of the lots appropriated: *Held,* Not error.

"2. Where it is shown that the property sought to be appropriated has no market value at the time of its appropriation, witnesses who are competent to testify to the value of the

property may give their opinions of the value of the land so taken."

See also *L. & W. Rly. Co. v. Hawk*, 39· Kas. 640, 641, where it is said as follows:

"The next objection is, that the opinions of incompetent witnesses as to the market value of the land were received. These witnesses were farmers living in the neighborhood of the land in question, well acquainted with its situation and fertility, its advantages and disadvantages, and they were therefore qualified to state their opinions in regard to its value before and after the railroad was constructed through it.    This is not a question of science or skill, requiring expert testimony, but it falls within one of the exceptions to the rule excluding mere opinions of ordinary witnesses.    It is not necessary that the witnesses shall be engaged in buying and selling land, nor that they should have knowledge of an actual sale of that or similar land, to make them competent.    A farmer living in the vicinity is presumed to be familiar with and to know the value of farm lands, and there can be no doubt of his competency when it is shown that he knows the situation and character of the land, its productiveness and availability for use, and who further states that he knows the value of the same, as did the witnesses in the present case."

We think that Ehret, the plaintiff below, was a competent witness to give his opinion with reference to the value of the land.    It appears that in 1870 he worked on a farm in the state of Illinois.    In 1873 he removed to Cowley county, Kansas, where he has since resided.    In 1877 he owned a farm in that county, and farmed the same himself.    In 1884 and since, he has owned the farm which it is now claimed was injured by the railroad company.    He purchased the same.    This farm is situated about four miles in a northeasterly direction from Winfield, where the plaintiff has resided a large portion of the time since he removed to Cowley county. In 1884 and in 1885 he resided upon and cultivated this farm. The railroad company took possession of its right-of-way through this farm about August, 1885, and while the plaintiff was residing upon it.    The plaintiff removed from the farm about November, 1885, and since that time and up to

the time of the trial of this case, which was on October 11, 1886, the property was in the possession of a tenant of the plaintiff, who cultivated the property for himself and paid rent to the plaintiff therefor. The plaintiff had full and complete knowledge with respect to the character, condition, situation and capabilities of this farm, and how the railroad injured it, and testified in detail with respect thereto. We think his testimony was competent. We cannot say that the court below erred in the admission of testimony.

II. Nor can we say that the court below erred in excluding testimony. The witness whose testimony was excluded did not seem, from his testimony, to be a competent witness to give an opinion. He did not know the value of the farm from his acquaintance with it, nor did he know the value of the farm from any sales made of any farm in that vicinity, or from any offers made to purchase the same.

III. We do not think that the court below erred in giving instructions to the jury. The instructions complained of we think were proper under the facts of the case.

The judgment of the court below will be affirmed.

All the Justices concurring.