THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. H. H. DAVIDSON.

1. RAILROAD, *Construction of* — *Measure of Damages.* Where a railroad company has taken and appropriated land for railroad purposes by virtue of condemnation proceedings, the owner of the land may recover for its depreciation in value, taking into consideration any purpose for which it might be the most profitably used.

2. CITY — *Fitness of Land for Addition.* And in such a case, where the land was situated near a city, and although used as a farm was suitable for subdivision into lots, blocks, etc., and for an addition to the city, such facts may be taken into consideration in determining the market value of the land and the amount of its depreciation in value by reason of the taking and appropriation of a part thereof by the railroad company for railroad purposes.

3. EVIDENCE — *No Error.* The introduction of the testimony of certain witnesses and of a map in evidence considered, and *held*, that no substantial error was committed.

*Error from Sumner District Court.*

ON the application of the *Railway Company*, commissioners were appointed to assess the damages for taking certain land. They awarded *Davidson* $3,808. He appealed to the district court, where he recovered judgment for $6,000. The

defendant company comes to this court. The material facts are stated in the opinion.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error:

1. The court erred in overruling the motion of the plaintiff in error to strike out the evidence of the witness C. E. Davis. This witness, upon his direct examination, testified that prior to the condemnation of the land by the railway company the land in question was worth about $300 an acre, and that immediately thereafter it was worth $75 an acre. The cross-examination of this witness shows very clearly that his opinion of the market value of the property in question was founded upon an improper basis. The witness did not value the property with respect to its then market value. His estimate was based on his opinion as to what it could have been sold for to some fool, if divided into lots and blocks as an addition to the city of Wellington. This witness, in speaking of the land in question, said: "I think that there could have been some fool found that would have paid that the same as Staub's." The witness had no right to estimate the market value of the property upon the theory that some fool could have been found that would buy the property at an unreasonable or speculative price. The railway company was required to pay only the difference between the fair market value of the land immediately before and immediately after the condemnation.

2. The court admitted the evidence of John D. Share, offered by the plaintiff below. This was erroneous, and very prejudicial to the railway company. The object of the introduction of this evidence is very apparent. The defendant did not contend that the condition of the property in question, as well as that surrounding it, could not be shown upon the trial, nor that the jury could not have been informed thereof; but it earnestly contended in the trial court, that the evidence of the fact that other lands adjoining the city of Wellington had been platted or divided into lots and blocks and streets and alleys was entirely incompetent, and

greatly tended to mislead the jury, and raise a collateral question that had no bearing upon the case. What had the platting of other lands into lots and blocks to do with the market value of the land in question? and in what manner could evidence thereof enable the jury to ascertain the amount of damages due the plaintiff? The only reason for the introduction of this evidence was to induce the jury to value the plaintiff's land upon the same basis of its value in lots, when it never had been, and probably never will be, needed as an addition to Wellington. The land in question was a farm, and at the time of the condemnation was being farmed, and at all times prior thereto had been farmed and used for grazing purposes. By showing what the value of property in the vicinity of plaintiff's property was after it was platted and sold, the jury were induced to and doubtless did believe that, if the railway had not been located over the plaintiff's property, it would have been platted as an addition to the city of Wellington, and the lots sold, as the above evidence showed the other lots had been sold. The jury had nothing to do with the platting of other property, or the sale of the same as lots, and the evidence of these sales misled the jury, and no doubt greatly influenced them in arriving at their verdict.

3. The court erred in permitting the witness D. C. Millard to testify to the market value of the property in question immediately after the location of the railway over the same, and as to what caused the difference between its market value before and after the location of the railroad thereon. This witness expressly stated that he did not know the manner in which the railroad was located and constructed over the land in question. In his direct examination he testified as follows:

"Ques. Do you know about how the railroad cuts that land? Ans. I have never seen — I have not been up along the route to see just exactly where it enters it or goes out, but I know about where it enters on the south line."

This witness certainly was not competent to express an opinion as to the market value of the land after the location of the railroad thereon. He had no information or knowl-

edge as to the manner in which the land was affected by the railroad, and was not informed as to the place where it entered or left the land on the north.

4. The court erred in admitting the following evidence of the witness D. C. Millard:

"Ques. You say the property could have been sold at the figures you placed on it, in your opinion, in May? Ans. I believe a purchaser could have probably been found that would have paid $150 an acre for it; or a syndicate could have been worked up, from the fact that they paid so much more a short time before that for land, that I believe a syndicate could have been worked up at that price."

We have been unable to find any rule sustaining the admission of this evidence, and do not think any can be found.

5. The court erred in admitting in evidence the map offered by the plaintiff. The property in question consisted of a farm of 160 acres, no part of which had at any time been platted or divided into lots or blocks or divided into subdivisions less than 160 acres. It had always been used as a farm and for grazing purposes. The map, the admission of which is complained of, did not represent the property correctly, or show the condition it was in at the time of the condemnation.

6. The court erred in giving to the jury the following instruction:

"In estimating the market value of the land, both before and after the condemnation, it will not be proper for you to make the estimate on what the land would have been worth had the land at that time, or prior thereto, been laid off or platted into lots and blocks as an addition to the city of Wellington, but you must consider the land as it was at that time, and with reference to the use that was then being made of the same, and all other uses that could reasonably be supposed from the evidence could be made of it thereafter, whether for farming purposes or for platting and laying the same off into lots and blocks as an addition to the city of Wellington."

This instruction was misleading, and did not state the law correctly. Even if it had been correct to have told the jury to consider the property in any condition other than that which

it was in at the time of the trial, or to make any inferences in regard to its use in the future, they should have been controlled or instructed to have been guided by what it was probable the property would have been used for in the future.

*A. E. Parker*, and *James Lawrence*, for defendant in error:

In determining the value of land appropriated for railroad or other public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to any and all uses to which the property may be shown to be adapted. Evidence may always be properly introduced in such cases for the purpose of showing that the land condemned has a special value for building lots, for wharves, for mining or milling purposes, or for any other special purpose. The measure of damages in such cases is not confined to its value and the damages it sustains when estimated only for the purposes for which the property is then being used; but the damages will be estimated on the basis of the highest market value of the property at the time it is appropriated for those purposes for which it is shown to be best adapted.

These rules for determining the measure and elements of damages in cases like the one at bar are fully sustained by the following, among other authorities: *Boom Co. v. Patterson*, 98 U. S. 407, *et seq.*; *C. R. Rly. Co. v. Moore*, 124 Ill. 329, (15 N. E. Rep. 764); *Dupuis v. C. & N. W. Rly. Co.*, 115 Ill. 97 (3 N. E. Rep. 720); *Washburn v. M. & L. W. Rld. Co.*, 59 Wis. 364 (18 N. W. Rep. 329); *Doud v. City & F. D. R. Co.*, 76 Iowa, 438 (41 N. W. Rep. 65); *Stinson v. C. S. P. & M. Rly. Co.*, 27 Minn. 284 (6 N. W. Rep. 787); *Montana Rly. Co. v. Warren*, 6 Mont. 275 (12 Pac. Rep. 641); *Esch v. C. M. & S. P. Rly. Co.*, 72 Wis. 229 (39 N. W. Rep. 129); *In re Rugheimer*, 36 Fed. Rep. 376; *Laflin v. C. W. & N. W. Rld. Co.*, 33 id. 418; *G. R. & I. Rld. Co. v. Weiden*,

(Mich.) 38 N. W. Rep. 294; *Muller v. S. Pac. Rly. Co.*, 83 Cal. 240 (23 Pac. Rep. 265); *Hooker v. M. & W. Rld. Co.*, 62 Vt. 47 (19 Atl. Rep. 775); *Harris v. S. R. E. S. Rld. Co.*, (Pa.) 28 W. N. C. 44 (21 Atl. Rep. 590); *C. M. Rly. Co. v. Brown*, 15 Colo. 193 (25 Pac. Rep. 87); *L. & N. O. Rld. Co. v. Ryan*, 64 Miss. 399 (8 So. Rep. 173); *C. & S. Rly. Co. v. Longworth*, 30 Ohio St. 108, 111; *Penn. S. V. Rld. Co. v. Cleary*, (Pa.) 17 Atl. Rep. 470; same case, 39 Am. & Eng. Rld. Cases, 138, n.

The plat of plaintiff's property was properly introduced in evidence. It does not purport to represent streets already opened, or the property already subdivided into lots and blocks, but only to show the situation of the property relative to the city of Wellington and its streets, and was only admitted to aid the jury in determining the availability and value of the property for town-site purposes. The jury viewed the property and could not possibly have been misled by the plat. *C. R. Rly. Co. v. Moore*, 15 N. E. Rep. 767, *supra; C. & E. Rld. Co. v. Blake*, 116 Ill. 163 (4 N. E. Rep. 488); *Railway Co. v. Longworth*, 30 Ohio St. 111, *supra; C. K. & W. Rld. Co. v. Dill*, 41 Kas. 736.

One pertinent hypothesis that was to be proved on the trial of this case — one important issue — was the uses to which the property in question was adapted. The map tended to aid the jury in understanding to what extent, if at all, the property was adapted to town-site purposes, and was relevant for that object. If the evidence was likely to improperly influence the jury upon any other point (which we submit it was not), the company should have asked, and the court would have given, an instruction limiting the purposes for which the map might be considered. In the absence of such request, this court will not presume that the jury drew any improper inferences from the plat. *Jones v. Inness*, 32 Kas. 181; *A. T. & S. F. Rld. Co. v. Stanford*, 12 id. 374, *et seq.;* Whar. Ev. (2d ed.), §§ 20, 21; *C. M. Rly. Co. v. Brown*, supra, 25 Pac. Rep. 88.

The opinion of the court was delivered by

VALENTINE, J.: On March 16, 1887, on application of the Chicago, Kansas & Nebraska Railway Company, commissioners were appointed by the judge of the district court of Sumner county to assess the damages resulting to the various land-owners along the line of the company's railway by reason of the location of such railway over such owners' lands. The commissioners awarded to H. H. Davidson, the owner of the northwest quarter of section 11, township 32 south, of range 1 west, the sum of $3,808. Davidson appealed to the district court, where the case was tried before the court and a jury about November 24, 1888, and judgment was rendered in favor of Davidson and against the railway company, awarding to him $6,000 as damages; and the railway company, as plaintiff in error, brings the case to this court for review.

The first claim of error is, that "the court erred in overruling the motion of the plaintiff in error to strike out the evidence of the witness C. E. Davis." Davis was a witness for Davidson, the plaintiff below. It appears that Davis resided in the city of Wellington; that he had been in the real-estate business in that city for about three years; that he knew the value of real estate in that city and vicinity, including the additions to the city and the farms surrounding it, and the plaintiff Davidson's land, which was near Wellington; that he knew the value of the property both before and after the commencement of the condemnation proceedings, and before and after the time when the railway company took the possession of the plaintiff's land. He testified that before the condemnation proceedings were commenced, and before the land was taken by the railway company, it was worth about $300 per acre, or in the aggregate about $48,000, and that after the condemnation proceedings were commenced, and after the land was taken and occupied by the railway company, it was worth only about $75 per acre, or in the aggregate $12,000; that the depreciation in the value of land was caused partly by

the condemnation proceedings and the occupancy of a part of the land by the railway company, and partly by the subsidence of a "boom," which had existed at that place just prior and up to that time; that about two-fifths of the depreciation was caused by the condemnation proceedings and the occupancy of the land by the railway company, and three-fifths thereof by the subsidence of the "boom." The foundation for the motion to strike out the testimony of this witness is as follows: It appears that a man by the name of Staub had sold his land in that vicinity at $650 an acre, and the witness Davis, who was a witness for the plaintiff below, testified, on his cross-examination by the defendant's counsel, with reference to this, among other things, as follows:

"Ans. . . . It [the land in question] would have been worth about as much as Staub's at $650 an acre.

"Ques. Do you think that land was ever worth $650 an acre? A. I think that there could have been some fool found that would have paid the same as Staub's."

The witness also testified upon his cross-examination, as follows:

"Q. What do you think that that was worth any $300 an acre for? A. Addition purposes.

"Q. It was never worth it for a farm, was it? A. No, sir; I do n't think it was.

"Q. It never had a fair market value of $300 an acre for farming purposes? A. No, sir.

"Q. That is a speculative price for addition property? A. Yes, sir.

"Q. And additions were speculations at that time? A. Yes, sir.

"Q. And were demonstrated to be serious speculations afterward? A. To some; yes, sir."

At the time of the condemnation proceedings the plaintiff's land was used simply as a farm. The witness further testified that the prices which he placed upon the plaintiff's land were based upon actual transactions; that is, upon actual purchases and sales which took place in that vicinity. Of course, the court below did not err in refusing to strike

out this witness's testimony; but the question which the railway company desired and now desires to raise by its motion was and is as follows: The plaintiff's land, though used only. as a farm, was nevertheless situated near a city, and was suitable for subdivision into lots,.blocks, etc., for an addition to such city. Now, the question is, may the fact that such land was suitable for such subdivision and addition be taken into consideration in determining what the real or market value of the land was, or should such fact be wholly excluded and ignored? This question we think is in the case; for whether it is raised by the defendant's motion to strike out or not, still we think it is raised by other proceedings in the case. Other witnesses besides Davis testified with regard to the purchase of land surrounding the city of Wellington, and the subdivision of the same into lots, blocks, etc., for addition purposes, and the sales of such lots; but all this was done merely as preliminary, and for the purpose of showing that the witnesses were competent to testify with reference to the value of the lands surrounding the city of Wellington and their value for the purpose of subdivision into lots, blocks, etc., for addition purposes, and not for the purpose of showing what the lots which might be made from the land in question would be worth, either separately or in the aggregate, if such land had previously and actually been subdivided into lots, blocks, etc., or had already become an addition to the city. The court also gave the following, among other instructions, to the jury:

"In estimating the market value of the land, both before and after the condemnation, it will not be proper for you to make the estimate on what the land would have been worth had the land at that time, or prior thereto, been laid off or platted into lots and blocks as an addition to the city of Wellington, but you must consider the land as it was at that time, and with reference to the use that was then being made of the same, and all other uses that could reasonably be supposed from the evidence could be made of it thereafter, whether for farming purposes or for platting and laying the same off into lots and blocks as an addition to the city of Wellington."

Questions like the present have already received some consideration, not only from this court but also from various other courts. In the case of *Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 Kas. 164, the following language is used:

"He [the land-owner] is entitled to recover the exact market value of the land upon which the grade is constructed, for whatever purpose such land might or could be used."

In the case of *Comm'rs of Smith Co. v. Labore*, 37 Kas. 484, 485, the following language is used:

"Land is never valued solely because of its inherent qualities, or merely for what is in it, or upon it. Its value depends as well upon many extrinsic circumstances. Vacant and unimproved land near some one of our large cities, which once might have been purchased for less than $5 per acre, might now, in many cases, be sold for more than $1,000 per acre. In such cases, it is not anything in the land itself, or upon it, which has brought about this great increase in the value, but the increase has been brought about solely by extraneous circumstances; and yet if the land were taken from the owner for public purposes, he would be entitled to recover from the public the full amount of its enhanced value. Or, if a part only were taken, and a part left, then he would be entitled to recover not only for the part taken but also for the entire depreciation of this enhanced value of the part left."

In the case of *K. C. & S. W. Rld. Co. v. Ehret*, 41 Kas. 23, 24, the following language is used:

"The value of land for farm use is a proper subject of inquiry in proceedings to condemn it for railway purposes. (*Mich. Air Line Rly. Co. v. Barnes*, 44 Mich. 223.) Indeed, the value of land for any use is a proper subject of inquiry in such cases, and anything may be shown which will tend to show a greater or less value, or which will tend in any manner to affect its value, and the owner may in all cases recover for its diminished value, taking into consideration any purpose for which it might be the most profitably used."

In the case of *K. C. & T. Rly. Co. v. Splitlog*, 45 Kas. 72, 73, the following language is used:

"In cases like this, where damages are limited to the value of the land appropriated, the proper inquiry is, What was

the market value of such land, for any present use, in the condition in which it was immediately prior to the condemnation by the company? Witnesses testifying as to the value of such land may consider any use to which the ground may be presently put, in forming their opinions as to its value; and its surroundings may be shown to the jury — its nearness to, or distance from, a town, village, or city, or other improvements that tend to affect its value; but the jury are to value the land as a whole, in the condition it was when taken. They have nothing to do with its subdivision into lots or blocks. They may consider its location, and the effect its location has upon its value as a whole; but the evidence as to how many lots it would make, and what they would sell for after the subdivision, is wholly improper."

In the case of *C. K. & W. Rld. Co. v. Willits*, 45 Kas. 114, 115, the following language is used:

" When the question of the value of real estate is in issue, the owner is entitled to show its market value for any purpose for which it might be the most advantageously used, and for which it would sell in the market for the highest price. [ Here follows a number of cases.] The question to be considered is really, What was the property worth immediately before the injury, if used for the purpose for which it could be the most advantageously used, and what it was worth in the same condition, except for the injury, immediately afterward, if it were used for the purpose for which it could be the most advantageously used?"

In the case of *Montana Rly. Co. v. Warren*, 6 Mont. 275, 284, (same case, 12 Pac. Rep. 641, 646,) the following language is used:

"Respondent was allowed to prove the value of the land for town-lot purposes. He had the right to do so, whether he had built upon it or not. As we have seen, the question is not to what use the land had been put. The owner has a right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether or not he so used it." ·

The court cites a number of cases, and among them, *Boom Co. v. Patterson*, 98 U. S. 403, 404, *et seq.* In the case of

*Railway Co. v. Longworth,* 30 Ohio St. 108, 111, the following language is used:

"In offering testimony on this issue, the owner was not limited to any preëxisting use of the land. If it was of little value as a farm, or for common uses, and was of great value as mineral land or as a town-site, that fact might be shown, though it had never been so used."

In the case of *Hooker v. M. & W. Rld. Co.,* 62 Vt. 47, 48, 49, (same case, 19 Atl. Rep. 775,) the following language is used:

"The rule is well established, that when a railroad corporation takes a portion of a parcel of land, under the right of eminent domain, for the construction of its railroad, it must pay the owner such a sum in money as will fairly compensate him for the damage he sustains. This sum is not to be determined by whether the owner, at the time of the taking, is using the parcel of land profitably or unprofitably, or not using it at all. His present use may not be the best use to which the parcel can be put, nor is he bound to continue such use, or part with a part thereof, valuing the whole by such use alone. He is entitled to receive such a sum as will fully compensate him for the lessened market value of the premises occasioned by such taking. Its market value depends not wholly upon the use to which the owner is putting it, but upon the use or uses for which it is available at the time it was taken. If it is available for a marble or granite quarry, a coal or a gold mine, or for *building lots* rather than pasturage, although not used for any of these purposes, or left unused by the owner, the use to which it may be put, profitably, must of necessity enter into consideration in determining the market value of the premises."

In the case of *Washburn v. M. & L. W. Rld. Co.,* 59 Wis. 364, 378, (same case, 18 N. W. Rep. 328, 334; same case, 20 Am. & Eng. Rld. Cases, 225, 234,) the following language is used:

"In the Washburn case, the learned circuit judge instructed the jury, in substance, that if the present value of the lands taken was enhanced by reason of the adaptability thereof to some use to which they might be put in the future

— as, for example, if land used only for farming purposes was so situated that it might be platted into city lots, and if its present value was thereby increased — such increased value was the proper basis for the assessment. We think this is a correct rule."

In the case of *Commissioners v. Dunlevy*, 91 Ill. 49, 57, the following language is used:

"The fourth error relied upon we do not regard as well taken. If the property had a market value if subdivided into lots or blocks, we perceive no reason why such value might not be proven. The owners were entitled to receive just compensation for the property to be taken, and in determining this compensation the jury had the right to take into consideration each element that might enter into the true market value of the property. If the property, when subdivided into lots or blocks, was of greater value than it would be without such subdivision, it was proper to prove that fact. The real question was, what the property was actually worth for any and all purposes for which it might be used. If the property was mostly covered with water, and could not be made available as lot property, the petitioners could easily establish that fact. Besides, the jury were not likely to be misled by the character of evidence complained of, because they, under the statute, examined the property, and could see and determine for themselves whether the property was valuable when divided into lots and blocks."

In the case of *Sherman v. St. P. M. & M. Rly. Co.*, 30 Minn. 227, 229, (same case, 10 Am. & Eng. Rld. Cases, 193, 194,) the following language is used:

"The evidence shows that the 80-acre tract in controversy, though at the time occupied as a farm, was situated in the vicinity of the city of St. Paul, and near certain public institutions. It appeared, on the cross-examination of the witnesses, that, in forming their estimates of the market value of the land, they had considered its adaptability for suburban residences. If such fact affected its market value at the time in question, it would properly enter into the consideration of the witnesses, and the jury also, in estimating such value."

See, also, the following cases: *Railroad Co. v. Cleary*, (Penn.) 17 Atl. Rep. 468, 470; same case, 39 Am. & Eng.

Rld. Cases, 132, 138; *Railway Co. v. Ryan*, 37 Minn. 38; same case, 30 Am. & Eng. Rld. Cases, 357.

We have examined every substantial question presented by counsel or involved in this case, and we do not think that the court below committed any material error. The testimony of the witness D. C. Millard was competent, although he may not have known "just exactly" where the railway entered and left the plaintiff's land. He knew "very nearly" how the railway cut the plaintiff's land. He was very well acquainted with the land. One answer of the witness probably should have been stricken out, but it certainly could not have done any harm to the defendant below, plaintiff in error, by permitting it to remain as a part of his testimony. There was certainly no error in permitting the map offered by the plaintiff below to be introduced in evidence. It was made by the county surveyor from actual measurements; besides, the jury viewed the premises themselves and knew the exact condition of the property in question, and knew just how the railway was constructed across it. See *Railway Co. v. Longworth*, 30 Ohio St. 108, 112; *C. & E. Rld. Co. v. Blake*, 116 Ill. 163, 167; same case, 4 N. E. Rep., 488, 491; *C. R. Rly. Co. v. Moore*, 124 Ill. 329; same case, 15 N. E. Rep. 764; *Hartshorn v. B. C. R. & N. Rld. Co.*, 52 Iowa, 613.

The judgment of the court below will be affirmed.

All the Justices concurring.