No. 41,270

THE BOARD OF PARK COMMISSIONERS OF THE CITY OF WICHITA, KANSAS, *Appellant,* v. HANFORD M. FITCH and LEAVENA FITCH, *Appellees* and *Cross-Appellants.*

(337 P. 2d 1034)

Opinion filed April 11, 1959.

*Donald A. Bell,* of Wichita, argued the cause, and *Fred W. Aley* and *Lawrence E. Curfman,* both of Wichita, were with him on the briefs for the appellant.

*Emmet A. Blaes* and *Roetzel Jochems,* both of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Vincent L. Bogart, Cecil E. Merkel, John W. Brimer,* and *Harry L. Hobson,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The Board of Park Commissioners of the city of Wichita began a proceeding to condemn a piece of real estate belonging to the appellees Fitch in February, 1956. The landowners being dissatisfied with the appraisement thereof appealed to the district court. In the trial in the district court, the jury rendered a verdict finding that the value of the land condemned amounted to $50,000. Appellant appealed to this court from the verdict of the jury and from the order of the district court overruling its motion for a new trial. The landowners have cross-appealed as to the matter of interest on the judgment. We shall hereinafter refer to appellant as the park board and the appellees as the landowners.

In the beginning, we will state certain facts which appear to be undisputed. The land involved in this appeal is a tract of approximately 29.4 acres located near the southern boundary of the city of Wichita. It had been recently brought into the city. The tract contains two lakes which are separated by a continuous piece of land which is made up of especially fine, white sand. The lakes together would account for some fifteen acres of the area and are surrounded by land which would give room for a road and other

facilities on the lakeside. There is a piece of the property amounting to some 2.8 acres jutting out to the east which fronts on old Lawrence Road which gives access to the property by a paved street and the property is quite near U. S. Highway 81, so that it is accessible to all of the city of Wichita and near transient travel. It is said that there is a population of some fifteen to twenty thousand people in the vicinity of the tract. It is further established that the park board is taking this property for park and recreational purposes.

The park board in this appeal raises several alleged trial errors dividing its brief into six numbered propositions. However, we believe that there is a certain overlapping in the specifications argued and we shall consider the appeal under three main heads. The principal contention in this appeal by the park board is that the landowners were allowed to speculate on the value of the real estate. The evidence of the landowners consisted of the testimony of Mr. Fitch, one of the owners, who testified that he had owned the land for some twenty-seven years; that in 1944 or 1945, while he was in the military service, the land had been leased for sand dredging and pumping; that the dredging and pumping had continued for two or three years; and that the present condition of the tract had been the same for ten or twelve years. He also testified as did other witnesses of both parties that the water in the lakes was probably derived from the underbed of the Arkansas River which was filtered through the sand and was blue and clear. Fitch testified further that he had had the idea of making a recreational park of this property for some years, but had been delayed by certain actions of the city in threatening to condemn it for a dump before it was taken into the city. It seems to have been established beyond dispute that when the land is taken into the city, it is automatically zoned for residential property use, and then is later subject to be re-zoned in accordance with its best use, if that accords with the city's master plan.

Fitch further testified that in September, 1955, he applied to the city to have his property re-zoned to light commercial which would allow him to use the same for a recreational park; that his request was denied and during the next February, the city began its proceedings to condemn the property for recreational use. The landowner further testified as to the good facilities of the tract for fishing, boating, swimming, and other recreational uses, and that in his opinion the tract was worth from $60,000 to $70,000.

The next witness for the landowners was a Mr. Stauffer who testified that he had been in the recreational business almost all of his life, had owned a recreational park in Wichita until the fall of 1955; that he was conversant with such properties throughout the midwest; that the tract here involved was especially suited for recreational purposes. He gave his opinion as to the value of the tract. The landowners also introduced a Mr. Kays who had been engaged in the recreational business and witnesses McDowell and Frey who qualified as real estate men who were conversant with recreational properties. All of these witnesses stated their opinion as to the value of the tract.

In arguing that the evidence of the landowners was based upon speculation, the park board first raises the question of how a property is to be valued where, as here, there are no known sales of comparable property. In this case, there is testimony that no similar property existed near Wichita. In such a situation, it is difficult to arrive at the true value of the property being condemned. It seems to us that the recent case of *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332 P. 2d 539, presents the nearest test for the ascertaining of the value of the property. In the Eisenring case, it was said:

"Apparently it is the turnpike's theory of the case that since sand leases are not traded in commerce, there can be no damages. This is consistent with the testimony of the expert witnesses produced by the turnpike. It presented three real estate men who knew nothing about the sand business and nothing about the factual features of the sand lease in question. They testified that the 'piece of paper,' the lease as an instrument, had no value.

"On the point of law presently under discussion this court several years ago had the identical question before it in *Miles v. City of Wichita*, 175 Kan. 723, 267 P. 2d 943. That case involved a sand lease near Wichita where the same expert witnesses used in the instant case testified as experts. The objection there was that the expert witnesses were permitted to testify to a market value derived from factors which were improper for a jury to consider—that it was predicated upon speculative factors and had no probative value—and thus constituted no evidence of value at all. This objection was summarily dismissed by stating '. . . It was proper for the witnesses to consider in passing their opinion as to the market value of the lease matters, such as investment value of one of many criteria in reaching a conclusion. . . .' (p. 729.)

"The absence of market value, in the sense that there is a lack of evidence of comparable sales, does not prevent recovery by the owner in the event of condemnation. It occasionally happens that a parcel of real estate or a leasehold interest taken by eminent domain is of such a nature, or is held or has been improved in such a manner, that, while it serves a useful purpose

to its owner, he would be unable to sell it at anything like its real value. Where the usual means of ascertaining market value are lacking, or other means must from necessity of the case be resorted to, it is proper to determine the market value by considering the intrinsic value of the property, and its value to the owners for their special purposes. The owner of the property taken is not required under such circumstances to make any pecuniary sacrifices. He is entitled to whatever the property is worth to him, or anyone else, for any purpose to which it is adapted. These special uses or purposes to which the property is adapted must be real—founded upon facts capable of proof—and not merely speculative or imaginary. If the owner has adopted a peculiar mode of using the land, by which he derives profit, and he is to be deprived of that use, justice requires that he be compensated for the loss to himself. It is the value which he has, and of which he is deprived, which must be made good by compensation. (4 Nichols on Eminent Domain [3rd Ed.], § 12.32, p. 133.)" (pp. 778-779.)

It is argued by the park board that in the Eisenring case, the income of the property was from a going business, and that in this case, the tract was not being used as a recreational park at the time of the taking. However, it is felt that the park board overlooks the fact that the landowners are entitled to show the value of the land for the most advantageous use. This question was discussed in the case of *Mai v. City of Garden City,* 177 Kan. 179, 277 P. 2d 636:

"Defendant argued that the court erred in permitting witnesses Milford and Stone to testify as to the value of plaintiffs' land for residential and commercial purposes, that their testimony was speculative, and the damage to plaintiffs' property should have been based upon its value for farming purposes only.

"It is the general rule of law that full compensation to the owner of land taken under the right of eminent domain includes not only the value of the property actually taken but also includes the diminution in value of that re-maining, and is to be based upon the best and most advantageous use to which the property may be put. The land owner is entitled to show the market value of his land for every purpose to which it was adapted. *The fact that it has been used for one purpose only does not prevent him from showing its availability for other appropriate uses and its value for such uses.* (*McIntyre v. Board of County Comm'rs of Doniphan County,* 168 Kan. 115, 211 P. 2d 59; *Steifer v. City of Kansas City,* 175 Kan. 794, 799, 800, 267 P. 2d 474.)

"Another well-established general rule of law is that the value of a parcel of land taken by eminent domain is always a matter of opinion, and may be proved by opinion evidence. Experts, such as dealers in real estate, who have a general knowledge of the subject of real estate values and are familiar with prices in the neighborhood may give their opinion as to value of land. Opinion evidence is also usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiar-

ized themselves with land values. The competency of such witnesses is primarily for the court, and the weight to be given such testimony is for the jury. (18 Am. Jur. 999, § 355.)

"We held in *Railway Co. v Weidenmann*, 77 Kan. 300, 94 Pac. 146, that in a proceeding to condemn a right of way for a railroad through a farm a farmer who has lived many years in the neighborhood and knows the character of the land and the course of the railroad through it, as well as the condition in which it was left by the construction of the railroad, and who states that he is acquainted with its market value in that neighborhood, is competent to express an opinion of its market value, although he does not know of any actual sales in the neighborhood at the time the land was appropriated.

"In *Burger v. City of Wichita*, 132 Kan. 105, 294 Pac. 670, we stated that persons living in the vicinity of vacant city property may testify concerning its value, although they were not engaged in the real estate business, and have not bought nor sold lots in that vicinity. For cases of like holding, see 2 Hatcher's Kansas Digest [Rev. Ed.], Evidence, § 232.

"Plaintiffs' witnesses consisted of a qualified real estate man, a farmer living in the neighborhod, and a general building contractor who was also engaged in farming, all of whom were acquainted with the market value of plaintiffs' land, its advantages and disadvantages, its close proximity to the City, the best use to which the land could be put for residential, commercial and farming and, under strict cross examination, testified to the elements going to make up the damages and, in all, were well qualified to state their opinions in regard to the market value of plaintiffs' land before and after taking the land for the ditch. (*K. C. & S. W. Rld. Co. v. Ehret*, 41 Kan. 22, 20 Pac. 538; *L. & W. Rly. Co. v. Hawk*, 39 Kan. 638, 18 Pac. 943; *C. K. & W. Rld. Co. v. Cosper*, 42 Kan. 561, 22 Pac. 634.)" (pp. 182-183.) (Italics supplied.)

It seems a little inappropriate to argue that the value of this tract could not be ascertained for recreational purposes when the park board itself is taking it for that purpose and the park board is of the opinion that it presents such a good recreational spot that it will be to the best interests of the public to have it operated as a public park instead of as a private one.

The first objection raised by the park board as to the question of speculation came when after counsel had cross-examined all of the landowners' witnesses but one, and those witnesses had been excused from the stand, motions were made to strike the testimony of the witnesses for the landowners. These motions were worded as follows:

"Comes now the Board of Park Commissioners and moves the Court for an order striking all the testimony of the witness, Norris Stauffer, and instructing the jury to disregard all of such testimony for the following reasons: (1) that the witness showed himself not to be qualified as an expert witness to testify as to value of the property involved in this condemnation case, (2) for the further reason on cross-examination, the witness admitted he knew

of no sales or leases or offers to sell or offers to lease of comparable property, (3) for the further reason that the witness showed that he had arrived at his estimate of value based solely upon speculation without any definite or specific plan of use, and (4) that the testimony of the witness showed that his estimate of value was based upon illegal and unauthorized uses of the land in the following respects, among others: (a) that the centemplated swimming which is contrary to the ordinances of the City of Wichita, Kansas; and (b) that the contemplated commercial and light commercial uses which are not permanent under the zoning enforced on June 1, 1956, for the property involved in this condemnation.

.    .    .    .    .    .    .    .    .    .    .  .    .    .

"Comes now the Board of Park Commissioners and moves the Court to strike all of the testimony of the witnesses, Reid Kays and W. D. McDowell, and instruct the jury to disregard all of such testimony for the reason that neither of said witnesses showed themselves properly qualified to testify as to the value of the land involved in this condemnation; for the further reason that both witnesses showed that they were disregarding the zoning ordinances of the City of Wichita in their determination of the highest and best use; for the further reason that the testimony of both witnesses showed that their contemplated highest and best use was purely speculative and had no foundation in fact."

It will be seen that the motions were designed at that time to strike the entire testimony of witnesses Stauffer, Kays, and McDowell. In the brief, the park board would seem to argue that the testimony of all of the landowners' witnesses should be stricken, but the above quoted motions contain the only objections seeking to strike testimony found in the record.

It will also be observed that it would seem that the park board is basing its objection in the main upon the cross-examination of Stauffer, Kays, and McDowell, which testimony was not objected to in any way at the time it was elicited by the park board. It is true that the cross-examination led the witnesses far afield in describing the excellent facilities of the landowners' tract. One of the witnesses thought that the recreational park should include fishing, boating, swimming, a dance pavilion and restaurant. He became quite lyrical in his description of a restaurant with a dance hall located near a lake on a white sandy beach, but this testimony was elicited by the park board. Another witness thought the property should be devoted to only fishing and described the different means of deriving profit therefrom.

The park board was at perfect liberty and no doubt did argue the credibility of this testimony to the jury. Perhaps, it cross-examined the witnesses too much.

In 98 C. J. S. 129, it is said:

"An opposite party asking a witness a question on cross-examination not only invites but requires an answer, and he waives any right to object to a responsive answer. A party cross-examining his adversary's witness cannot hold his adversary responsible for incompetent evidence developed in the course of cross-examination."

In the case of *Schamp v. City of Wichita,* 160 Kan. 4, 159 P. 2d 402, which was an eminent domain case, the city attempted to strike certain testimony of the landowners' witnesses. There, this court said:

"Defendant, as appellant in this court, argues that the court permitted incompetent, irrevelant and immaterial testimony and refused to strike the same on motion. The point is not well taken. Defendant made no objection to the testimony of plaintiffs' witnesses Watson and Shaffer. Its only objection to the testimony of the witness Beard was sustained. Its motion to strike out 'all of the testimony' of the witness Brady was properly overruled. Aside from the testimony respecting his qualifications he was careful in his direct examination to make it clear that his opinion of the value of the property was of the date of May 15, 1943, and that the property was adaptable to industrial use at that time; that a purchaser for it at that time, or soon thereafter, for such purposes was likely to be found. On his cross-examination he was led into the expression previously set out, which was that in the development of an industrial property within a period of five to ten years would not be unreasonable. But this did not disclose that he was fixing a valuation of the property at five to ten years in the future. He had already fixed it at a previous date." (p. 9.)

Note should also be made that in the motions to strike out the testimony, no attempt was made to point out which part of the testimony was deemed to be incompetent. See *Smythe v. Parsons,* 37 Kan. 79, syl. ¶ 4, 14 Pac. 444.

In 88 C. J. S. 240, cases are collected to the effect that a motion to strike the testimony of witnesses comes too late when such motion is not made until the witnesses have left the witness stand.

As would appear from the objections of counsel above quoted, the park board made a considerable point in the trial that the tract was still zoned for residential purposes and seemed to argue that therefore, the landowners could not rely on using the tract for recreational purposes. It would seem hardly reasonable on the part of the park board to be in the position of condemning property for recreational purposes and at the same moment to maintain that had not the park board deemed it wise to take the property for that purpose, the city would refuse to re-zone the property so that it could be used by its owner for the same purposes. We think that the trial court did not err in overruling the motions to strike out the testimony of the landowners' witnesses.

The next point made by the park board in this appeal is based upon certain objections sustained to questions upon cross-examination of landowners' witnesses. When the landowner was testifying, he was asked the following questions:

"Q. Now, in connection with your sand lease, were you paid on a royalty basis for sand that was removed?

"A. Yes, I was.

"Q. And what was the basis of the royalty payments?"

At this point, the trial court sustained an objection to the above question. It would appear that the ruling was correct in view of the fact that the sand lease had long since been terminated and there was no evidence that the property was best adapted for the production of sand at the present time. The park board also objects to the orders of the court refusing to allow the witness Stauffer and the witness Kays to testify on cross-examination to the terms of the lease on a resort known as Meadow Lake and as to certain swimming beaches. But these properties had not been shown in any way to be comparable to the property being condemned and therefore, it would seem that the trial court was correct in sustaining the objections.

The third ground of objection as to the trial of the case below is again based upon speculation in the testimony. At the end of the trial, the park board submitted certain requested instructions relating to the matter of speculation and conjecture. The trial court gave the following instructions:

### "Instruction No. 3.

"In determining the fair and reasonable market value of the property in this case the Jury should consider every fact or circumstance appearing in the case which would either enhance or diminish such value. Such facts and circumstances will include the size of the property, its location, considering the best and most advantageous use, the surrounding developments, its nearness to or its distance from the City of Wichita, and every other fact, circumstance or condition that would tend to make the property more or less valuable.

### "Instruction No. 4.

"Fair market value as used in these instructions means that cash that the property will bring on the open market when one wants to, but is not compelled to buy it from one who wants to sell but is not compelled to sell, after due consideration is given by both parties to the highest and most profitable use to which the property may be put. Market value is not what the property would bring at forced sale under the hammer, nor on the other hand, what the purchaser would pay if he felt the owner was in a corner and virtually compelled by circumstances to sell his property.

"Instruction No. 5.

"You are instructed that by the highest and most profitable use or uses to which the land could be put *is meant either some existing use or one which is so reasonably likely, in the near future, that the availability of the property for that use would affect its market price and would be taken into account by a purchaser."* (Italics supplied.)

It would seem that the above quoted instructions fairly cover the question of speculation and that the park board was not prejudiced by the failure of the court to include the requested instructions (*Randle v. Kansas Turnpike Authority,* 181 Kan. 416, 312 P. 2d 235; and cases found in Hatcher's Kan. Dig., Trial, § 201, and West Kan. Dig., Trial, § 260).

It is argued by the park board that the verdict of the jury was excessive and based upon speculation. We have discussed the question of speculation above, and fail to discover any way in which this court could find that the verdict of the jury, which was approved by the trial court, was excessive in this case.

The foregoing covers the pertinent objections of the park board and disposes of its appeal herein.

Turning now to the cross-appeal, the landowners contend that the district court erred in not providing that they should receive interest on the judgment from March 14, 1956. That was the date of the publication of the resolution of the governing body of the city of Wichita declaring it necessary to obtain the property in question by eminent domain proceedings. The landowners point to the provisions of G. S. 1949, 26-204, in which it is provided that "title to lands condemned by any city for parks, parkways or boulevards shall vest in such city upon the publication of the resolution of the governing body condemning the same."

It seems to us that the landowners overlook the fact that the same section of the statute provides that the city clerk shall prepare and deposit a copy of the report of the appraisement in the office of the treasurer of the city; that if the amount of the award is also deposited with the city treasurer for the benefit of the owners of such lands, the treasurer shall thereupon certify such facts upon the copy of the report; and shall pay such awards to such persons as shall be respectively entitled thereto; and that it is further provided in the section, that upon the recording of a copy of said report *so certified* in the office of the register of deeds of the county, the right to the possession of the lands condemned shall vest in the city and the city shall have the right to forthwith take possession of, occupy,

use and improve said lands for the purposes specified in their resolution appropriating the same. Thus, it appears that the city does not have a right to possession of the lands until a report of the award by the appraisers is filed in the office of the treasurer along with the amount of the award, and that fact certified on the report is filed in the office of the register of deeds.

It is to be noticed further that under the provisions of G. S. 1949, 26-206, the condemner has a right to abandon the condemnation proceedings subsequent to the making of the award. (*State v. Nelson*, 126 Kan. 1, syl. ¶ 2, 266 Pac. 107.)

Further, the condemner may under the provisions of the same section appeal from the award of the appraisers in which case the amount of the award is not deposited with the city treasurer, and in fact, cannot be deposited if the appeal is to be maintained. (*Lowrey v. State Highway Comm.*, 170 Kan. 549, 228 P. 2d 210.) Thus, under the provisions of the statute, after the publication of the resolution referred to by the landowners and after the appraisement, a condemner can decide whether to take possession of the property and oust the landowners, can abandon the condemnation, or appeal from the award of the appraisers. The publication of the resolution referred to by the landowners in this case occurs before the making of the appraisal and may occur long before the landowners lose possession of the property. The court is of the opinion that interest on the award and judgment does not begin to run under the statutes until the filing of the certified report in the office of the register of deeds and until the condemner obtains a right to possession of the property.

In this case, the trial court found that the certificate stating that the funds to pay the appraisal were filed in the office of the city treasurer on June 12, 1956, and held that interest was payable on the judgment from that date. We believe that the court was correct in this holding. The following cases are in accord therewith: *Burke v. Board of Education of Common School District No. 110*, 181 Kan. 534, 537, 313 P. 2d 272; *Steck v. City of Wichita*, 179 Kan. 305, syl. ¶ 9, 295 P. 2d 1068; same case on subsequent appeal, 182 Kan. 206, 319 P. 2d 852.

From what has been said above, the district court was correct both as to its orders appealed from by the park board and as to the cross-appeal by the landowners. Therefore, the judgment rendered by the district court should be affirmed and it is so ordered.