No. 44,732

City of Wichita, Kansas, *Appellee*, v. Wilma D. Jennings, Individually, and as Executrix of the Will of Earl D. Jennings, Deceased, *Appellants*.

(433 P. 2d 351)

Opinion filed November 13, 1967.

*Charles W. Harris*, of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Orval J. Kaufman, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew* and *Paul M. Buchanan*, all of Wichita, were with him on the briefs for the appellants.

*William C. Farmer*, of Wichita, argued the cause, and *John Dekker, Paul V. Smith, Douglas E. Shay, Leo R. Wetta, James R. Schaefer, Thomas A. Wood* and *Larry L. Witherspoon*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from landowners' dissatisfac-

tion with an award in a condemnation proceeding. The landowners appealed from the appraisers' award and have now appealed to this court from the verdict of the jury in the district court.

The foundation facts may be briefly stated.

On April 1, 1964, the City of Wichita condemned certain land owned by appellants for the construction of Interstate Highway 35. The original land consisted of approximately 2.8 acres located on the east side of K-15, a four lane highway, and south of Wassal Street. The landowners had developed a substantial residential area and retained the tract in question for commercial development. The taking involved 2.46 acres, leaving a .34 acre triangular tract.

On appeal to the district court the jury returned a verdict for the landowners in the amount of $34,500. This was $6,000 less than the award of the court appointed appraisers. The landowners on appeal to this court allege numerous trial errors which they contend require the granting of a new trial.

We will first review the alleged errors which we consider to be the most prejudicial.

Appellants complain that the trial court erred in allowing an expert witness to use the sale price in an option contract as evidence of the value of comparable land. We are forced to conclude that the complaint is well founded. This court has not heretofore passed on the question and the courts of other states are divided on the propriety of such testimony.

We are inclined toward the rule that an option to purchase can be of no help to a jury in determining market value because of the opportunity for collusion and bad faith where the optionee has no obligation to buy and other possible contingencies exist.

Appellants further suggest that a witness for the appellee was permitted to refuse to testify on the basis of claimed privilege when in fact no privilege existed.

The witness testified as to his opinion of the present market value of the property which was based on the sale price of comparable properties in the community. The appellants attempted to test the witness' credibility by questioning him as to his appraisal of property in the community for mortgage loan purposes. The record discloses the following:

"Q. Would you tell the Jury the total value you put on the land under the South City Center there?

"Mr. Farmer: Now if the Court please, I want to object to this as getting away off into things that have no consideration—

"The Court: Overruled. I am going to permit him to answer.

"The Witness: May I ask you a question, Your Honor, about this, in answering this? This appraisal was made recently for, as Mr. Harris said, for mortgage purposes. The mortgage transaction is not complete.

"The Court: All right. I will not require you to answer under those conditions.

"The Witness: I don't think in fairness to my client that I should."

The trial court later stated that he would not require the witness to testify without permission of his client. The court also stated on motion for a new trial:

"There are certain things in the business world that you can not divulge without sacrificing your reputation and also the betrayal of confidences; and at the time I ruled I thought that existed with reference to this witness on the questions you were asking on cross-examination."

Again the court stated:

". . . True, in the business world today they are not exempt by statute, but this Court is not going to order the disclosure of negotiations, just the same as this Court will not order trade secrets or other matters with reference to businesses disclosed. And that was the basis upon which Court ruled at the time."

K. S. A. 60-407 abolishes generally privileges of witnesses and exclusionary rules. It provides in part:

"Except as otherwise provided by statute . . . (b) no person has a privilege to refuse to be a witness, . . . and (d) no person has a privilege to refuse to disclose any matter or to produce any object or writing, and (e) no person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any object or writing, . . ."

It would appear that there are no privileges or immunities from testifying unless they are specifically set out in the Rules of Evidence as found in Article 4 of the new Code of Civil Procedure. We find no privilege not to testify in connection with an ordinary business transaction. The appellee relies on K. S. A. 60-432 which provides:

"The owner of a trade secret has a privilege, which may be claimed by him or his agent or employee, to refuse to disclose the secret and to prevent other persons from disclosing it if the judge finds that the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."

An appraisal of property for a loan company, which anticipates loaning money on the property, is not encompassed within the term trade-secret. Black's Law Dictionary, Fourth Edition, defines trade-secret as follows:

"A plan or process, tool, mechanism, or compound known only to its owner and those of his employees to whom it is necessary to confide it. [Citations omitted.] A secret formula or process not patented, but known only to

certain individuals using it in compounding some article of trade having a commercial value. [Citations omitted.]"

An appraisal of real estate by one hired to perform such task is not a trade-secret within the meaning of K. S. A. 60-432, and the witness was not privileged to refuse to testify. Whether the evidence was relevant was not considered by the trial court and is not considered here.

Appellants contend that the trial court improperly limited the landowners as to the number of witnesses. Under the circumstances in this case we are inclined to agree.

At the pretrial conference the opponents in the litigation were directed to exchange with each other the names and addresses of the witnesses they planned to call at the trial of the case. The appellants advised the appellee that they intended to call five experts and so advised the jury in the opening statement. No suggestion was made as to limiting the number. At the trial, after three of appellants' expert witnesses had testified, the trial court announced that the litigants would be limited to three expert witnesses on a side.

Generally speaking the court has wide discretion in limiting the number of expert witnesses and three would not be considered unreasonable. However, one of the witnesses testified only to the most advantageous use and the landowners were limited to two experts as to actual value. It is also quite possible that appellants had reserved their two best witnesses to conclude their case.

If the trial court desired to exercise its discretion to limit the number of expert witnesses it should have given the parties warning before the presentation of the evidence was commenced. We are impressed with the statement in 5 *Nichols on Eminent Domain*, 3d Ed., §18.44 [2], p. 264. as follows:

". . . But even when the evidence of all the witnesses is directed to the same point, the limitation should be imposed before any of the expert testimony has been offered; for if the court, after a certain number of experts have testified on one side, refuses to allow any more to be put on the stand by the same party, it may do that party an injustice, since counsel may have reserved his best witnesses to conclude his case; . . ."

For the reasons heretofore stated the judgment must be reversed and a new trial granted.

There are, however, other disputed trial issues which should be decided for the benefit of the litigants before the case again goes to trial.

The appellants contend that it was error for the trial court to permit expert witnesses for the condemning authority to testify on direct examination as to the purchase price of specific tracts of neighboring land. This was definitely prohibited prior to the new Code of Civil Procedure. This court had stated that in condemnation proceedings opinions as to the value of property should be confined to the property in question, unless on cross-examination, for the purpose of testing the knowledge and competency of the witness the value of adjoining land is inquired into. (See *Luecke v. State Highway Commission*, 186 Kan. 584, 352 P. 2d 454, and cases cited therein.)

Appellants contend that the rule should still be followed. We are of the opinion that such exclusionary rules were specifically abolished by the rules of evidence included in the new code.

The Advisory Committee in submitting the rules of evidence for the consideration of the legislature noted:

"The purpose of the rules is to make admissible evidence which logically tends to establish a fact. All evidence is to be admissible unless specifically restricted." (Kansas Code of Civil Procedure, Gard, p. 362.)

Relevant evidence is defined:

" 'Relevant evidence' means evidence having any tendency in reason to prove any material fact." (K. S. A. 60-401 [*b*].)

Exclusionary rules are abolished by K. S. A. 60-407 which provides in part:

"Except as otherwise provided by statute . . . (*f*) all relevant evidence is admissible."

It was noted by the Advisory Committee:

"This rule wipes out all existing restrictions and privileges and limitations on the admissibility of relevant evidence. They are then reinstated by subsequent sections insofar as desirable. . . ." (Kansas Code of Civil Procedure, Gard, p. 370.)

As all exclusionary rules were wiped out and none were reinstated as to the use of the purchase price of a specific tract of neighboring land to prove value, we are forced to conclude that the legislature intended to do away with the exclusion.

It must be understood, however, that such evidence must present the purchase price of a sale of comparable land which was not so remote as to time and distance as to be irrelevant. The determination of this fact is to be left to the sound discretion of the trial court. Most of such factors go more to the weight to be given the testimony than its admissibility.

Appellants complain of the trial court's ruling on the admissibility of certain plats and photographs. These were submitted for the purpose of showing the most advantageous use to which the property may have been put. Without discussing each of the eight exhibits separately it may be stated as a general rule that photographs and drawings are admissible to show a possible scheme of development for the purpose for which the land is most available. In 5 *Nichols on Eminent Domain,* 3d Ed., §18.11 [2], at page 157, it is stated:

". . . Thus, evidence of the market value of the property for the best and most profitable use to which it may be devoted in the reasonably near future is admissible.

"As bearing upon these issues the owner may offer a plan showing a possible scheme of development for the purpose for which it is most available, provided it appears that the likelihood of demand for the property for that purpose is such as to affect market value. . . ."

The rule was applied in *C. K. & N. Rly. Co. v. Davidson,* 49 Kan. 589, 31 Pac. 131 and *Van Welden v. Ramsay's Inc.,* 199 Kan. 417, 430 P. 2d 298.

It will also be understood that distorted photographs or drawings so colorful as to distract the attention of the jury should not be admitted. This is a matter that must be left to the discretion of the trial court.

The appellants contend the trial court erred in instructing the jury that: "The burden of proof is upon the landowners to establish the amount of compensation to be paid." They suggest that K. S. A. 26-513 provides:

"Private property shall not be taken or damaged for public use without just compensation."

and the trial of a condemnation action violates the statute and constitutional prohibitions unless just compensation is awarded regardless of the burden of proof.

There is much merit to appellants' suggestion.

The instruction as given above is the same as that placed in the Pattern Instructions for Kansas. (P. I. K. 11.02.) However, the committee drafting such instructions expressed the belief "that because of the special nature of the land condemnation case a burden of proof instruction is not practical or helpful."

There is no uniformity among the authorities as to the necessity of giving such an instruction or the nature of the instruction that should be given.

If the appraisers' award were disclosed to the jury, the burden of proof could well be placed on the landowner to prove a higher value and on the condemner to prove a lesser value. However, since the appraisers' award is not so disclosed and in view of the fact that in condemnation proceedings there is no formal joinder of issues, we conclude that the general doctrine of burden of proof is inapplicable. A general discussion of the question, with annotations, will be found in 5 *Nichols on Eminent Domain*, 3d Ed., §18.5, p. 300. It should be understood we do not find such an instruction standing alone to be sufficiently prejudicial to justify a reversal.

What has been said as to the burden of proof in no way reflects on the rule requiring the landowner to go forward with the evidence. Orderly and consistent procedure requires that one of the litigants be required to so proceed in all cases.

For the reasons hereto given the judgment is reversed with instructions to grant a new trial.

APPROVED BY THE COURT.