No. 46,187

Howard M. Morgan and Grace L. Morgan, *Appellees,* v. The City of Overland Park, Kansas, a Municipal Corporation, *Appellant.*

(483 P. 2d 1079)

Opinion filed April 10, 1971.

*Donald C. Amrein,* of Mission, argued the cause and was on the brief for the appellant.

*George A. Lowe,* of Lowe, Lowe and Lowe, of Olathe, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment rendered on a jury verdict in a condemnation proceeding.

The appellant, the city of Overland Park, Kansas, through eminent domain proceedings, acquired approximately twelve acres of land of the appellees for a municipal park. About six acres of this tract was covered by a lake or pond. Both parties appealed from the award of the appraisers. The matter was tried to a jury resulting in a verdict very substantially increasing the award. The facts will be presented in more detail as we discuss the issue to which they apply.

The appellant first complains that the trial court erred in admitting as an exhibit a map depicting other sales of land without a showing that such tracts were comparable to the landowners' tract, and in admitting testimony about such sales for the same reason.

The map designated as Exhibit 7 was prepared by one of appellees' expert witnesses. He testified:

"In making my appraisal, I used the market data approach, which is the study of other sales of property in the immediate area of the Morgan tract. Exhibit 7 is a map I made of the market data studies showing the location of properties and the sales of properties that I thought were relevant to this property. . . .

". . . I secured all of this material in order to determine in my own mind what I thought this property was worth based on the study of the market, and this is the best basis of comparison that we possibly have, is what the similar properties in the immediate area sell for. . . . These sales that I show are all sales of vacant land and are not sales of improved properties."

The witness then designated ten properties which had been sold in the vicinity of the land in question. He gave the size of the tracts, the location, date of sale and sale price. The tracts varied in size from one-third acre to thirty-five acres. The sales ranged in time from 1961 to 1966. The witness testified further:

"Q. All right. Are those sales representative enough to you that they actually do give you a solid basis on which to form an opinion of the value of the Morgan tract in February, 1966?

"A. I always make up a map like this for my own study so that I can get the relationship of the sales to the subject property, and I think that fits into a very positive pattern around this property, as to its logic for rezoning for apartments and the pattern as to sale prices. It is always some variance in sales, but they show a pattern that lead me to believe the value I established."

We find no basis for the appellant's complaint. In *City of Wichita v. Jennings,* 199 Kan. 621, 433 P. 2d 351, we held:

"Under the rules of evidence, K. S. A. 60-401, *et seq.,* an expert witness, on direct examination, may testify as to the purchase price of specific tracts of neighboring land in a condemnation proceeding." (Syl. ¶ 4.)

It was stated in the opinion:

"As all exclusionary rules were wiped out and none were reinstated as to the use of the purchase price of a specific tract of neighboring land to prove value, we are forced to conclude that the legislature intended to do away with the exclusion.

"It must be understood, however, that such evidence must present the purchase price of a sale of comparable land which was not so remote as to time and distance as to be irrelevant. The determination of this fact is to be left to the sound discretion of the trial court. Most of such factors go more to the weight to be given the testimony than its admissibility." (p. 625.)

The expert's opinion of value is the primary evidence under submission to the jury. Sales of comparable properties are offered in condemnation cases more often as supportive of the reasoning by which the expert arrives at his opinion rather than a direct indicia of value. In the recent case of *City of Bonner Springs v. Coleman,* 206 Kan. 689, 481 P. 2d 950, we state:

"It must also be understood that once a witness has qualified as an expert, a court cannot regulate the factors he uses or the mental process by which he arrives at his conclusion. These matters can only be challenged by cross-examination testing the witness' credibility." (p. 695.)

It must also be understood, however, that the responsibility of defining the extent of compensable rights is in the courts and if it is established that value testimony was based on noncompensable items or the credibility of the testimony is otherwise destroyed the testimony should be stricken in response to a proper motion.

In *Sacramento, etc. Drainage Dist. ex rel. State Reclamation Bd. v. Reed,* 215 C. A. 2d 60; 29 Cal. Rptr. 847, we find the rule stated as follows:

". . . A condemnation trial is a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner. (See Kratovil and Harrison, *Eminent Domain—Policy and Concept,* 42 Cal. L. Rev. 596, 626.) There is a limit to imaginative claims even when described in terms of a prospective buyer's mental reactions. To say that only the witness' valuation opinion has probative value, that his 'reasons' have none, ignores reality. His reasons may influence the verdict more than his figures. To say that all objections to his reasons go to weight, not admissibility, is to minimize judicial responsibility for limiting the permissible arena in condemnation trials. The responsbility for defining the extent of compensable rights is that of the courts. . . ." (p. 69.)

The same rule would apply to appellant's suggestion that the expert witness should not have been permitted to adjust the sale price of other lands considered to reflect price increase.

The appellant's next four contentions are closely related and may be combined.

The appellant contends that the court erred in admitting an exhibit and testimony in connection therewith, the exhibit being an architectural rendition of a five-story, sixty-three foot high apartment building when on the date of the taking the maximum height permitted by the zoning ordinance was two and one-half stories, thirty-five feet high; the court should have directed a verdict in favor of appellant as all of the appellees' evidence as to highest and best use was based on a five story apartment building, and the court failed to properly instruct the jury under the circumstances.

It appears to us that the instruction properly states the law. It followed PIK 11.11. The appellant complains that "It was prejudicial to the appellant not to have the jury told by the Court that such use was illegal." The question was not so much the fact that the existing zoning prohibited the suggested use but rather was there a reasonable probability of it being later rezoned to permit such use.

In Orgel on Valuation Under Eminent Domain, relied on by appellant, we find the following statement in Volume 1, Section 34, page 165:

"Conceding that the potential use of the property for illegal purposes is speculative, may the jury consider the possibility that a use now illegal may later become legal? If this possibility is not too remote, the use may have some effect on the present market value, for the purchaser may buy with an eye to the likelihood of removing the legal restriction. Must the use be disregarded entirely because it is at present illegal or may the chance of legalizing it be considered? . . .

"It appears, therefore, that the future use may be considered if it is probable that it will be made available and the contrary decisions turn merely on the facts as to the likelihood of legalization. . . ."

Also in Section 34, at page 167, it is stated:

"The courts have had little difficulty in reaching what seems to us to be a proper result in cases involving zoning ordinances. It is generally held that although an ordinance may prohibit the use of the property for certain purposes at the time of condemnation, yet if there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered."

In Nichols on Eminent Domain, Volume 4, § 12.322 [1], p. 238, we find the rule stated as follows:

"Where the enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use—in other words, where the forbidden use is *malum prohibitum* rather than *malum in se*—and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative." (See, also, *Board of Park Commissioners v. Fitch,* 184 Kan. 508, 337 P. 2d 1034.)

The facts here are somewhat unusual. At the date of the taking, the general zoning ordinance limited apartment buildings to a height of thirty-five feet and two and one half stories. In less than a year after the taking, and before this case was tried, the zoning ordinance was changed permitting high-rise and semi-high-rise apartment structures.

It would appear that appellant's planning consultant was working on a recodification of the new zoning code at the time the land was taken.

We see no merit in appellant's contention that there was no reasonable probability that rezoning would take place permitting high-rise apartments. The fact that the zoning was so changed in less than a year speaks with more emphasis than the testimony of experts to the effect that there is a reasonable probability that a zoning ordinance will be changed. However, there was substantial competent evidence that the zoning ordinance would have been recodified to permit five-story apartments and there was also substantial competent evidence of a reasonable probability that the tract under consideration would have been rezoned for apartment construction. The planning consultant for appellant testified:

"As a consultant to the city, I worked on a new zoning code for at least a year prior to the time it was adopted. The city planning commission and the council did not spend that much time on it. During that time, the fact that there was going to be a new zoning recommendation and a new zoning code was not a secret, but I do not know how widespread the knowledge was. . . ."

The testimony of one of appellees' witnesses is summarized in the record:

"Based on my familiarity with the Morgan tract and my familiarity and knowledge of the area based upon the considerations that would be taken into account by any zoning board, it would have been very logical to have rezoned the Morgan tract for apartments to accommodate the plan I have described because of the development of apartments in the area. The number of apartments that have been zoned in the area and the obvious trend to apartments

for the area would indicate that this should be an apartment development in order to best use and utilize the land to its greatest advantage. 'It was my opinion that a prudent zoning authority should rezone it' to accommodate this plan."

Another of appellees' witnesses testified:

". . . Based upon my familiarity with the zoning rules and regulations in Overland Park, and based upon my experiences before the zoning authorities there and also my acquaintance with zoning procedures, by virtue of my appointments by the City, in my opinion this property had very good chance to be re-zoned to accommodate apartments because it was a continuation of zoning. The zoning was right across the street. . . ."

Appellant contends that James W. Starnes has acquired a contractual interest in the property and is a real party in interest. The record does not disclose what interest he may have, if any. As the matter was not presented to the trial court it will not be considered by this court on appeal, particularly where there would have to be an investigation outside the record to determine the nature of the interest, if any.

In no way could the rights of appellant be affected. Under the provisions of K. S. A. 26-502, the only obligation as to parties insofar as the condemner is concerned is to name in the petition the owners and all lienholders of record and the name of any party in possession. If Starnes had an equitable interest and did not disclose it, appellant's rights would not be affected.

A careful examination of the record and the errors alleged by appellant disclose no prejudicial error which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., concurring in part and dissenting in part: While I approve of the disposition made of this appeal, I disagree with the legal concept expressed in Syllabus No. 2. The rule embodied therein is far too broad, as I see it.

In my view an expert witness should be required to base his conclusions on factors which are relevant, and his testimony should be so restricted. To decree that a court cannot regulate the factors used by an expert in forming his opinion is tantamount to giving him free rein to consider any and all factors which may please his fancy. Certainly this cannot be a valid or a salutary rule.

The determination of relevancy, materiality and the admissibility

of evidence is a judicial function and courts should not abrogate their responsibilities in such regard without sober reflection. The obligation of a trial court to rule on evidentiary matters pertains to the testimony of all witnesses, expert and common alike. The rule expressed in the offending syllabus is a novel departure from that principle.

Accordingly, I must record my dissent from what is said in Syllabus No. 2 and in the corresponding portion of the opinion. In so doing I recognize that identical language appears in *City of Bonner Springs v. Coleman,* 206 Kan. 689, 481 P. 2d 950, the import of which unfortunately escaped me when the opinion was handed down. The language was not, however, essential to the decision in the *Bonner Springs* case, and I take this early opportunity to rectify my inadvertent error.

FROMME, J., joins in the foregoing concurring and dissenting opinion.